## Case No. 1,260.

### BELL et al. v. OHIO LIFE & TRUST CO. et al.

#### [1 Biss. 260; [2] 3 Wkly. Leg. Gaz. 17.]

Circuit Court, S. D. Ohio. Dec. Term, 1858.

PRIORITY OF JURISDICTION—DETERMINED BY SERVICE OF PROCESS—NOT BY ISSUING OF PROCESS—JURISDICTION HAVING ATTACHED IS EXCLUSIVE—OTHER COURTS AND OFFICERS NO AUTHORITY.

1. Priority of jurisdiction as between the state and the United States courts is determined by the service of process, and not by the date of the commencement of the suit.

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. The appearance of counsel for defendants is a waiver of notice of an injunction.

3. The rule that the issuing of a summons is such a commencement of a suit as to raise the statute of limitations does not apply to cases of this character; nor does the Code of the State of Ohio contemplate that the simple issuing of the summons, without service or other appearance, shall give jurisdiction over the subject matter.

4. Where process has been served and an injunction issued in this court, jurisdiction attaches to the exclusion of a state court in which a suit had been previously commenced, but no process served.

[Cited in Wilmer v. Atlanta & R. Air-Line R. Co., Case No. 17,775.]

5. After the issuing of such an injunction a state court has no authority to take action or make orders in regard to the subject matter over which jurisdiction had been exercised by this court; nor have its officers any right to the possession of or control over such subject matter.

6. If they obtain such possession, or exercise such control, they are interfering with the process of this court.

7. This court will, in such case, order the return to its receiver of all property over which its jurisdiction had attached.

[See note at end of case.]

In equity. On the 16th of October, 1858, Bell and Grant filed in the clerk's office of this court, a bill against the Ohio Life and Trust Company, their assignees and others, upon which a subpoena was issued and served the same day upon five of the members of the company. On the 18th, at ten o'clock a. m., upon notice to the defendants, who appeared in person and by their solicitors, the judges of this court made an order appointing a receiver of the trust company, and enjoining the assignees from disposing of the assets and ordering them to hold the assets subject to the further order of the court. [See Bell v. Ohio Life Ins. Co., Case No. 1,261.] These assets, consisting of notes, bonds, stock certificates, &c., were at that time in the actual possession of the assignees of the Ohio Life and Trust Company, and they had deposits with certain bankers in Cincinnati on current account. On the same morning, but subsequent in time, in the presence of the parties, one of the judges of the superior court in Cincinnati made an order in the case then pending in that court, in which Spinning and Brown were plaintiffs, and the assignees of the trust company, defendants, appointing the sheriff of Hamilton county, receiver, and requiring the assignees to deliver the assets to him. This case had been commenced on the 14th of October, by filing a petition, and a summons had been issued on the same day, in accordance with the Code of the state, but had not been served. The sheriff, without giving bond or taking an oath, immediately proceeded as such receiver to demand of the assignees the possession of the assets, and they were delivered to him by one of the assignees who had personal notice of the order made in this court. The receiver appointed by this court made due demand of the sheriff for the delivery to him of the assets of the company, at the same time exhibiting to him his authority as receiver under the order of this court. Delivery was refused by the sheriff, he claiming to hold the assets as receiver under an order of the superior court of Cincinnati. Rule against the sheriff to show cause why he should not be attached for contempt. [Attachment refused, but sheriff ordered to return assets to the United States court.]

Henry Stanberry and N. C. McLean, for plaintiffs.

C. D. Coffin, for defendants.

McLEAN, Circuit Justice. If the priority of jurisdiction depends upon the order just made, there is no question it belongs to the United States court.

But it is claimed on the other side, that the priority of jurisdiction depends upon the commencement of the suit, and that the suit in the superior court was first commenced; and therefore the jurisdiction first attached in that court.

It is not controverted, that service of process was first made in the United States court; and that the first order in relation to the assets was made by that court; but it is alleged that the suit in the superior court was first commenced by the filing of the petition and the issuing of the summons, and that the jurisdiction of that court then attached before any service on the defendants.

1. When was the suit in the superior court commenced?

2. When did the jurisdiction of that court attach?

The ground is assumed by Judge Gholson, that the jurisdiction of the superior court was acquired over the defendants on the 14th of October, by the filing of the petition and causing the summons to issue.

The provision cited to maintain this position is section 55, of the Code, (2 Swan. & C. Rev. St. Ohio, p. 961,) which declares, "A civil action must be commenced by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued thereon." And the judge very appropriately remarks, "Certainly, nothing less will suffice; and had any thing more been required, it is reasonable to suppose it would have been expressed."

With great respect to the learned judge, we are led, from a somewhat critical examination of the provisions of the Code, to think its language is plain and unmistakable. We think there is nothing new or mysterious in the New York or Ohio Codes, in the mode of bringing an action. We think there is nothing left to conjecture on this subject.

The mistake in giving a construction to the 55th section, seems to us, to consist in supposing the 55th section was intended to cover every necessary requisite to give jurisdiction

over the parties, and the subject matter of the controversy. Now we are aware that the title in the Code declares that the distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished; and in their place, there shall be hereafter but one form of action, which shall be called a "civil action."

It was lately said by a distinguished judge, "This attempt to abolish all species, and establish a single genus, is proved to be beyond the power of legislative omnipotence. They cannot compel the human mind not to distinguish between things that differ."

The 56th section points out the duty of the plaintiff in the commencement of his action. He is required to file with the clerk a praecipe stating the names of the parties to the action, and demanding that a summons issue thereon; and the ensuing section, 57, declares the summons shall be issued by the clerk under the seal of the court, &c. It shall be directed to the sheriff of the county, and command him to notify the defendant named therein, that he shall answer the petition. And in section 60, when a writ is returned, not served, other writs may issue. In section 61, "The summons shall be served by the officer to whom it is directed, who shall indorse on the original writ, the time and manner of service." In section 73, "In all cases the return must state the time and manner of service." And again in 78, it is declared, "when the summons has been served, or publication made, the action is pending, so as to charge third persons with notice of its pendency, and while pending, no interest can be acquired by third persons in the subject matter thereof, as against the plaintiff's title."

We suppose that all the sections of the Code, having a direct relation to the commencement of an action, should be so construed as to carry out the expressed intention of the codifiers. The filing of the praecipe, the direction of the process to the sheriff to notify the defendants that they are required to answer the petition, and that the return of the officer must state the time and manner of the service, are all matters of positive requirement, and are plain and unambiguous.

And in the 20th section,—"An action shall be deemed commenced, within the meaning of this title, as to each defendant, at the date of the summons which is served on him, or on a co-defendant, who is a joint contractor, or otherwise united in interest with him; where service by publication is proper, the action shall be deemed commenced at the date of the first publication, which publication must be regularly made. An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this title, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by service within sixty days."

The first part of this section is significant to show what is deemed the commencement of an action, as to each defendant at the date of the summons which is served on him; and also where service by publication is proper, the action shall be deemed commenced at the date of the first publication; and what shall be deemed equivalent to the commencement thereof. Now all these show that something more is requisite for the commencement of an action beyond that of filing a petition and directing a summons to issue. The other indispensable requisite, the service of the process, and the date of that service, to give jurisdiction of the subject matter of the controversy, seems to be indispensable. And it is not perceived how any other construction is consistent with the language of the Code.

Every one knows that the commencement of an action will raise the statute of limitations. And for this purpose the suit is properly commenced before the process is served. If the bar is not complete before the date or issue of the summons, but becomes complete before service, it has been held that the commencement of the action shall date from the writ.

"When a court has jurisdiction of the subject matter and of the parties, the bringing a suit or action in that court," we are informed, "must be regarded as the beginning of the inquiry into the matter of controversy. From that time the jurisdiction of the court attaches."

Now that "the beginning of the inquiry into the matter in controversy," from which time the jurisdiction of the court attaches, means a hearing on the merits of the case, before process has been served or notice given to the defendants, is sustained by no court. I presume, therefore, that I may have misapprehended the meaning of the learned judge on this point.

A reference is made in the case of Carpenter v. Butterfield, 3 Johns. Cas. 145, in which it was held that the issuing a writ in a cause, is, for every material purpose, the commencement of the suit. But the point in controversy was, whether a debt or demand, to be set off under the statute, must be an existing debt or demand, at the time of the commencement of the plaintiff's action. And the court held the matter of set-off must exist at the time the suit was commenced, overruling former decisions, in which it was held that a matter happening after the beginning of the suit, but before plea pleaded, may be pleaded as a set-off.

In the notes appended to this case, a great number of authorities are cited to show that suing out the writ is the "beginning of the action." This is not doubted as to many purposes; though there are conflicting authorities on the subject. But it has been held that fictions of law should not work a wrong contrary to the truth.

We know that, in the king's bench, the bill of Middlesex is a mere order or command of

the court, and has no testo, and is confined to the county in which the court sits. In every other county a latitat was the first process, grounded on a supposed previous return of a bill of Middlesex; but the modern English authorities consider the declaration as the exhibition of the bill, and the commencement of the suit. But why need we trust to the common law forms in the English courts, which are more curious than useful, to instruct us in the modified forms of pleading, especially when the Code informs us there shall be hereafter but one form of action?

In Johnson v. Comstock, 6 Hill, 10, which arose under the New York statute, authorizing the commencement of suits by declaration, it was held that the filing of a declaration is not the commencement of a suit; but the commencement dates from the actual service upon the defendant.

By the Code of Procedure of the State of New York, (sections 106, 112–114,) civil actions in the courts of record in that state shall be commenced by the service of a summons. The service shall be made, and the summons returned, with proof of the service, to the person whose name is subscribed thereto, with all reasonable diligence. The New York Code seems to contain all the material requisites to constitute a service under the Ohio Code.

We are told, "there is strong negative evidence that the issuing, and not the service, of a summons, was intended by the powers of the Code, to be the commencement of an action under our system." But we have been unable to find any negative evidence to sustain this supposition. Confident we are that all positive evidence is against it. We think the codifiers of Ohio have, with a great care and a wise circumspection, guarded the Code against misconstruction as to the commencement of an action. Taking the sections of 55, 56, 57, 61, 63 and 78, no one, it seems to us, can fail to see and feel the force of the language used. Section 57 was not intended to describe the entire mode of bringing a civil action. That mode consisted of parts which made a whole, and consummated the thing designed.

An action, like every other thing, must have a beginning. The filing a petition is one thing, the praecipe another, and the issuing of the summons another, and the service return another; all these are in the Code. They belong to the same class. In the order of time they succeed each other, and are essential to give jurisdiction over the parties, and the subject matter of the controversy. We contend for nothing more than this; and, less than this, gives, as we think, no color of jurisdiction over the defendants.

On the 16th of October, the bill of Bell and Grant was filed in the clerk's office, and a subpoena was issued and served on five of the trust company; and on the succeeding Monday morning, under a notice, a motion was made for a receiver, and an injunction

was laid upon the assets of the trust company, "and ordering them to hold the assets subject to the further order of the court."

By the service of the process, no question can arise that the jurisdiction attached; and as little doubt can exist that the order "to hold the assets, subject to the further order of the court," fastened itself upon the assets. Prior to this, no steps had been taken, but to file a petition and issue a summons, which was not served.

Under the eleventh rule of the supreme court of the United States, it is declared, "No process of subpoena shall issue from the clerk's office, in any suit in equity, until the bill is filed."

And by the 7th rule, the process of subpoena shall constitute the proper mesne process in all suits in equity, in the first instance, to require the defendant to appear and answer the exigency of the bill, &c.

The 16th rule declares "upon the return of the subpoena, as served and executed upon any defendant, the clerk shall enter the suit upon his docket as pending in the court, and shall state the time of the entry."

We have then the proceedings in personam against the defendants, and the proceedings in rem against the assets, prior in time to any steps taken by the sheriff. We deem it unnecessary to press the argument, however cogently it might be urged, that the process, having been served, necessarily drew after it the assets. But we have no occasion to resort to this ground. The proceedings in rem hold the property beyond question. The defendants appeared by counsel, and were heard in the case, and the order for the injunction was made, "and the defendants were ordered to hold the assets, subject to the further order of this court."

An appearance of counsel for defendants, has uniformly been held a waiver of notice of the injunction. In the case of Varrards v. Nagee, a defendant was committed for a breach of an injunction, by Lord Eldon, though the only notice which he had of it was from the information of the plaintiff's solicitor.

The orders pronounced by the court in cases of special injunctions, have been various at different times. It appears from the precedents, that the form frequently adopted in special injunctions, enjoined the party "till further order;" in some cases the injunction has been "till appearance and further order;" in others, "till answer and further order." But the form at present used, and which is established by a rule laid down by Lord Eldon, is, "till answer or further order." Eden, Inj. 382. In New York, injunctions are usually granted "until the further order of the court."

In the emphatic language of Chief Justice Marshall, in Smith v. McIver, 9 Wheat. [22 U. S.] 535, it is said: "In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it."

In the case of Daniels v. Stevens, 19 Ohio, 238, the court says: "The great question in the case is a question of jurisdiction. A court of chancery, like a court of law, must have jurisdiction of the person as prescribed by law, &c. Before a decree can be operative, the court must have jurisdiction of the person, as well as of the subject matter."

In Miers v. Zanesville & M. Turnpike Co., 11 Ohio, 273, the court says: "This bill was first filed; but the decree rendered, and the receiver first appointed, was in the other case. We think that he whom the law first authorizes to receive the tolls, should be protected in his possession; and we find the statute operates to confer this power by the decree.. In the present race between creditors, whose equities are equal, this first authority to receive seems to us to confer the priority to the receiver of Muskingum, and that all questions of appropriation and priority must be settled in the court to which he renders his account."

What became of the action first commenced? The receiver was appointed in the second action. Does the first action still rest on the petition and summons?

The established rule is, that a lis pendens duly prosecuted, and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree; and the lis pendens begins from the service of the subpoena, after the bill is filed. Murray v. Ballou, 1 Johns. Ch. 576.

A court of equity will interpose by injunction to prevent the transfer of a specific thing, which, if transferred, will be irretrievably lost to the owner, such as negotiable securities and stocks. Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738.

The service of the writ is the commencement of the suit. Jencks v. Phelps, 4 Conn. 149. It is essential that the party should be duly summoned. State v. Bryce, 7 Ohio, pt. 2, pp. 82, 83. A court of chancery, like a court of law, must have jurisdiction of the subject matter and the person. Daniels v. Stevens, 19 Ohio, 222, 238. Every court, that its proceedings may have any validity, must have jurisdiction over the subject matter. Maxsom v. Sawyer, 12 Ohio, 195, 207.

The power to hear and determine a cause is jurisdiction; it is coram judice whenever a case is presented which brings this power into action; if the petitioner presents such a case in his petition, that on a demurrer the court would render a judgment in his favor, it is a case of undoubted jurisdiction.

If jurisdiction of a court once attach, subsequent irregularities will render the judgment voidable only. Paine v. Mooreland, 15 Ohio, 435; Boswell v. Sharp, Id. 447; Adams v. Jeffries, 12 Ohio, 253, 271. Every intendment will be made to support the power of the court. Yet in proceedings of these courts, if they transcend the limits which the law prescribes, and assume to act where they have no jurisdiction, their acts are utterly void. Adams v. Jeffries, Id. 253, 273. If the court here or elsewhere, has not jurisdiction of the person, nor of the subject matter, its proceedings are wholly void. Such judgments are as waste paper. They are no protection to those who seek to enforce them. Id. 273.

A sale of lands by an administrator, under an order of a court having no jurisdiction to make the order is void. Ludlow v. McBride, 3 Ham. [Ohio,] 240, 255.

Where executions issue from a state court, and from a court of the United States, if there be no lien by judgment, the one under which a seizure is first made must prevail, and hold the property. Brown v. Clarke, 4 How. [45 U. S.] 4; Hagan v. Lucas, 10 Pet. [35 U. S.] 400; Pulliam v. Osborne, 17 How. [58 U. S.] 471.

"Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether it be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But, if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought even prior to a reversal, in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered in law trespassers." Elliott v. Peirsol, 1 Pet. [26 U. S.] 328. In Voorhees v. Jackson, 10 Pet. [35 U. S.] 477: "If there is a total want of jurisdiction, the proceedings are void and a mere nullity, and confer no right, and afford no justification, and may be rejected when collaterally drawn in question." The same doctrine is stated in Thompson v. Tolmie, 2 Pet. [27 U. S.] 157.

In Williamson v. Berry, 8 How. [49 U. S.] 540, the court says: "We concur that neither orders nor decrees in chancery can be reviewed, as a whole. in a collateral way. But it is an equally well settled principle in jurisprudence, that the jurisdiction of any court exercising authority over a subject may be inquired into in every other court, when the proceedings in the former are relied upon, and before the latter, by a party claiming the benefit of such proceedings. The rule prevails, whether the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of states." Glass v. The Betsey, 3 Dall. [3 U. S.] 6; Rose v. Himely, 4 Cranch, [8 U. S.] 241.

The multiplication of these authorities cannot be necessary and it only remains to apply them to the case before us.

Jurisdiction is claimed under the Code by the superior court, from the fact that the petition was filed and the summons issued.. And it is insisted, that this was the beginning of the action. In some sense it may be admitted to have been the beginning of the ac-

tion; but in no sense, until the service of process, was it the exercise of a jurisdiction which affected the rights of the defendants. Whether we look to the forms of the common law, the chancery law, as adopted by congress, or the code, a process or notice must be served on the defendants, before they are made parties.

In the 2d section, of the 3d article of the constitution of the United States, it is declared "the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States," &c., and "between citizens of different states, and foreign states, citizens or subjects."

In Boyle v. Zacharie, 6 Pet. [31 U. S.] 658, the court says: "The chancery jurisdiction given by the constitution and laws of the United States, is the same in all the states of the Union; and the rule of decision is the same in all. In the exercise of that jurisdiction, the courts of the United States are not governed by the state practice, but the act of congress of 1792 has provided, that the mode of proceeding in equity suits shall be according to the principles, rules and usages, which belong to courts of equity, as contradistinguished from courts of law. And the settled doctrine of this court is, that the remedies in equity are to be administered, not according to the state practice, but according to the practice of courts of equity of the parent country, as contradistinguished from that of courts of law, subject of course to the provisions of acts of congress, and to such alterations and rules as in the exercise of the powers delegated by these acts, the courts of the United States may from time to time prescribe."

The provision in the constitution, enabling citizens of other states and foreigners, to sue in the federal courts, has been uniformly considered a wise and necessary provision. It has been repeatedly eulogized by Chief Justice Marshall, and the great men, who with him, so fully illustrated and maintained the great principles of the constitution.

In the organization of a national judiciary it was considered a matter of the highest importance to organize a federal court, within each state, which might be supposed free from local influences and combinations, to which the citizens of other states, and foreigners, might resort for the maintenance of their rights. In carrying out this idea, it will be perceived, that no citizen of any other state, or a foreign citizen or subject, can be required to submit to the jurisdiction of a state court, in a civil case.

If sued in such court, he may remove the suit to the circuit court of the United States. For all the purposes of jurisdiction, the state is limited to its own territory, except it be substantially proceedings in rem, where the property within the state is made responsible, or by the acquiescence of those who live without the state or country.

The view of the learned judge who pre-

sided in the superior court, seems to be, that in disregard of the federal powers conferred on the courts of the United States, a state court may draw into its jurisdiction the assets of the trust company, and administer them under the Code; on the ground that a petition has been filed, and a summons issued. There is believed to be no authority for the exercise of such a jurisdiction under our system. And confident we are, that under the constitution of the United States, and the laws of congress, this cannot be done. It, in fact, would be a subversion of the constitution of the United States, and the laws of congress, in regard to federal jurisdiction. If anything is to survive the Code and the judicial power of the Union, it is the right of citizens of other states, and the citizens and subjects of foreign governments, to sue in the federal courts. It is true they may sue in the state courts, but there is no power in a state which can coerce them so to do. And if sued in a state court, the right of appeal is given. This was one of the great objects attained in the establishment of a federal judiciary. In numerous cases the supreme court has said, "in all the states the equity law recognized by the constitution and by acts of congress, and modified by the latter, is administered by the courts of the United States." Neves v. Scott, 13 How. [54 U. S.] 268.

In the case of Shelby v. Bacon, 10 How. [51 U. S.] 71, this court says they have no doubt the complainant may file his bill in the circuit court. And they say, "suppose the assignees had reduced to possession the whole amount of the assets of the Bank of the United States, chartered by Pennsylvania, and held them ready for distribution, could it be doubted that the complainant would have a right to file his bill in the circuit court, not only to establish his claim against them, but also for a proportionate share of the assets."

This shows that the courts of the United States, in the discharge of their duties, are bound to carry out their constitutional powers in regard to the claims of non-resident citizens and foreigners, without the aid of the state courts.

Spinning & Brown, in the superior court, rested alone on their petition and summons. Bell & Grant filed their bill in the clerk's office, and issued their subpoena, and it was served on five of the defendants, before any process was served by Spinning & Brown. That the jurisdiction attached under the process of Bell & Grant is undoubted. And it is equally clear, and indeed is not denied, that the assignees were enjoined by the circuit court, and ordered to hold the assets subject to the further order of this court. This order being prior to the action of the superior court, and being in exact conformity with the special orders in Eden on Injunctions, and with the rule of Lord Eldon, settles this controversy. And there was an ap-

pearance of counsel in behalf of the assignees. The proceedings were in rem. Nothing more was wanting.

We do not doubt that in the hurry and confusion of the hour, the superior court mistook the effect of the order of this court, and that they will direct the receiver to restore the assets to the possession of the receiver of this court.

It is clear, as we think, that the superior court had no power to interfere with these assets, "after the assignees had been directed to hold them, subject to the further order of this court." The receiver of the superior court was undoubtedly a trespasser, in removing the assets, and taking them into his own possession, but believing that he acted in good faith in obeying the order of the superior court, which, as we suppose, was made under an erroneous impression as to the effect of that order, we shall exonerate the receiver from all responsibility, on the return of the assets to the possession of the receiver of this court.

It would be painful for us to take any further step in this cause, but not doubting that the assets of the trust company are vested in this court, by the first service of the process in this court, through which its jurisdiction attached; and by its proceeding in rem, which "enjoined the assignees from disposing of these assets, and ordering them to hold the assets, subject to the further order of the court;" and that in virtue of these proceedings, the superior court could have no rightful jurisdiction, we are constrained by a sense of duty, to require the return of the assets by the receiver of the superior court, to the possession of the receiver of this court.

NOTE, [from original report.] Where different courts have concurrent jurisdiction, the one whose jurisdiction first attaches has paramount authority, and cannot be ousted by subsequent proceedings in other courts. Stearns v. Stearns, 16 Mass. 171; Bemis v. Stearns, Id. 203; Eaton v. Patterson, 2 Stew. & P. 9; Thompson v. Hill, 3 Yerg. 167; Hall v. Dana, 2 Aikens, 381; The Robert Fulton, [Case No. 11,890;] State v. Yarbrough, 1 Hawks, 78; Cleveland, P. & A. R. Co. v. City of Erie, 1 Grant, Cas. 212; Ex parte Bushnell, 8 Ohio St. 599; Merril v. Lake, 16 Ohio, 373; Henry v. Tupper, 27 Vt. 518; Bank of Bellows Falls v. Rutland & B. R. Co., 28 Vt. 470; Conover v. Mayor, etc., of New York, 25 Barb. 513; Keighler v. Ward, 8 Md. 254; Gould v. Hayes, 19 Ala. 438; Ex parte Robinson, [Case No. 11,935;] Clepper v. State, 4 Tex. 242. The United States courts cannot enjoin a sheriff from selling, under process from a state court. Ruggles v. Simonton, [Case No. 12,120,] September term, 1872, western district of Wisconsin, in United States circuit court. A state court will not discharge on a writ of habeas corpus county supervisors who have been arrested by the marshal on attachment from the United States circuit court for refusing to levy a tax ordered by that court, though they had been enjoined by the state court from levying such tax. The United States court having jurisdiction, they should be remanded to the custody of the marshal. Ex parte Holman, 28 Iowa, 88, where numerous authorities are cited. Where a United States officer holding a prisoner by United States authority, is served with a writ of habeas corpus issued by a state court, he should make a return, and show how he holds the prisoner. The state authority should thereupon abstain from longer interference, and any proceedings thereafter are illegal. U. S. v. Doss, [Case No. 14,985.] Where both the state and United States authorities have concurrent jurisdiction, the one which first assumes it will retain it until final judgment. The tribunal which first has jurisdiction will retain it. Hines v. Rawson, 40 Ga. 356; West v. Morris, 2 Disn. 415. A federal court will not enjoin persons from proceeding in a state court, &c. Bryan v. Hickson, 40 Ga. 405.