## UNION MUTUAL LIFE INSURANCE Co. *v.* THE UNIVERSITY OF CHICAGO and others.

*(Circuit Court, N. D. Illinois.*   March 23, 1881.)

1. FEDERAL AND STATE COURT—CONFLICTING JURISDICTION—SERVICE OF PROCESS.

Where two suits, involving to a great extent the same subject-matter, are brought respectively in a state and federal court, that court whose process is first served obtains jurisdiction of all questions which legitimately flow out of the subject-matter of the case.

2. SAME—SAME—SAME.

A bill was filed in a state court to restrain the foreclosure of a mortgage, and have the same set aside and declared void. Subsequently, but on the same day, a bill was filed in a federal court for the foreclosure of the same mortgage, and charged that the defendant was conspiring with divers persons to defeat a recovery, by denying that the said defendant had any authority to execute such mortgage. The process of the federal court was served upon the following day, before 11 A. M., but the process of the state court was not served until after 2 P. M. of the same day. *Held,* that the federal court had a right to go on and decide all questions which legitimately flowed out of the subject-matter of controversy in the case, namely, those affecting the existence of the mortgage and the right of the mortgagor to make it, so as to reach a decree, if the case warranted it, which should be conclusive upon the mortgagor; that is to say, which should prevent the mortgagor from ever setting up any claim or right to the property, or any claim whatever that it had not the right to execute the mortgage.—[ED.

*Leonard Swett, E. R. Bliss,* and *J. L. High,* for complainant.

*Charles A. Gregory,* for the University of Chicago.

*Decker, Douglas & Kistler,* for the Douglas heirs.

DRUMMOND, C. J.   In 1856, Stephen A. Douglas was the owner of a tract of land in the south part of the city, which he proposed to convey to certain parties or to a corporation for an institution of learning.   A contract was made between him and Dr. Burroughs, who represented the institution, on the second day of April, 1856.   This conveyance was to be made on certain conditions which were expressed in the contract, among which were that there should be a building erected on the property, and that a certain amount of money

should be contributed. On November 10, 1856, it appears that Dr. Burroughs ascertained that he was not able to comply with the conditions of the grant, and accordingly application was made to Mr. Douglas for the purpose of obtaining an extension of the time, during which certain things were to be done,—for instance, the laying of the foundation of the university,—and accordingly Mr. Douglas then made a memorandum by which he extended the time for laying the foundation of the university until the first day of May, and for expending the first sum of $25,000 until the first day of October, 1857. All the other conditions annexed to the grant were to remain in full force. This clause terminated the memorandum of agreement which was at that time made: "This extension of time is granted on the condition and with the understanding that the title of said land shall forever remain in said university, for the purposes expressed in said agreement, and that no part of the same shall be ever sold or alienated, or used for any other purpose whatever." Dr. Burroughs transferred all interest that he had in this contract, and in this memorandum, to the trustees of the University of Chicago; and on the thirtieth day of January, 1857, the legislature of this state passed an act incorporating the university, and on August 13, 1858, Mr. Douglas conveyed the land, which was the subject of the contract between him and Dr. Burroughs, to the board of trustees of the University of Chicago absolutely. There was no condition or qualification named in the deed such as is contained in the articles of agreement made between him and Dr. Burroughs. The Chicago University took possession of the property, a building has been constructed upon it, and the institution has been carried on with more or less success ever since.

February 8, 1876, the university executed a mortgage or deed of trust to the plaintiff in this case, the Union Mutual Life Insurance Company, to secure the sum of $150,000. These are all the facts necessary to refer to before mentioning what has taken place in the courts.

On the eighteenth of February last a bill was filed in the circuit court of Cook county by Mr. Mills, the state's attorney

of the county, who appears on behalf of the state; by Carter H. Harrison, mayor of the city, and *ex officio* one of the regents of the university, and by Isaac N. Arnold, also a regent of the university, for the purpose of declaring that the mortgage or deed of trust which was executed by the board of trustees to the plaintiff in this case was inoperative, on the ground, I infer, of the clause contained in the memorandum of Mr. Douglas of November 10, 1856, which has already been referred to. The prayer of the bill is that Levi D. Boone, the trustee in the deed which was executed by the board of trustees for the benefit of the plaintiff in this case, the University of Chicago, and John C. Burroughs, and the board of regents, who are made parties defendant, may be required to make full and direct answer to the same, etc. The bill asks that Boone and the Mutual Life Insurance Company may be perpetually restrained from attempting to foreclose the mortgage, and that the said trust deed or mortgage may be set aside and declared void as against the said University of Chicago, as a cloud on its title, and that the said deed may be delivered up to be cancelled.

On the same day, the eighteenth day of February last, the Union Mutual Life Insurance Company filed a bill in this court to foreclose the mortgage or deed of trust, claiming that default had occurred in the payment of the interest, and that the principal and interest were due, and that they had a right to foreclose the mortgage; claiming also that the university had failed in performing many of its contracts about keeping the property insured, etc. That bill contains this clause: "And your orator further charges that the said defendant, the University of Chicago, through its officers and agents, has conspired, or is conspiring, with divers persons to your orator unknown, to defeat your orator's recovery of its said claim as hereinbefore stated, by denying that it, the said defendant, the University of Chicago, had authority to execute said trust deed, and to convey said premises, as in the manner herein set forth."

The defendants to this bill are the University of Chicago, a corporation created under the laws of this state; N. K. Fair-

banks, president, and O. W. Barrett, secretary, of the board of trustees; Levi D. Boone and Samuel S. Boone, the one as trustee of the mortgage or deed of trust, and the other as the successor of the trustee. As I have said, the bills were filed on the same day, the one in the circuit court of Cook county, and the other in this court. It seems that the bill in the state court was filed before the bill in this court, although on the same day. No process of either court was served on the day the bill was filed. On the nineteenth of February, the day following, the process of this court was served on all the defendants, before 11 o'clock A. M. of that day. The process issuing from the state court was not served until after 2 o'clock P. M. of the same day; so that the process issuing from this court was first served; and the question is whether this court obtained jurisdiction of the case for the purposes contemplated by the bill, viz.: for the foreclosure of the mortgage. Although the bill was filed in the state court first, on the same day, the rule, I take it, is well settled that the right of a court to take jurisdiction of a party depends upon the service of process upon the party. If a party commence a suit, and process is not served, it does not take effect as against the party defendant, howsoever long process may remain in the hands of the officer. The process of this court being first served upon the defendants, the University of Chicago, and upon Boone, gave this court jurisdiction and the right to go on and foreclose this mortgage. It is said, and there is some evidence in an affidavit tending to establish the fact, that there was a race on the part of the plaintiff, in the case in this court, first to obtain service upon the defendants. It may be, but at the same time this court must look at the facts. It is often a question which has been most diligent, and courts have to determine rights according to the diligence of a party. And if, in this case, the plaintiff has been more diligent than the plaintiff in the state court, how can this court deprive it of its equity, and the preference to which it may be entitled? I do not know of any way that this can be done. Then this court retains this bill for the purpose named in it— for the foreclosure of this deed of trust or mortgage—and the

question is, what is the effect of that? After these two bills were filed the plaintiff in this court came into court, and, on the twelfth instant, filed a supplemental bill alleging the facts of the litigation in the state court: that a bill was there filed for the purpose named, and giving a copy of the bill; also alleging that Stephen A. and Robert M. Douglas, heirs at law of Mr. Douglas, the donor of this land to the university, had interposed in the state court and become defendants, and filed a cross-bill for the protection of any equities they may have, on the ground, as I understand, that in consequence of the failure on the part of the Chicago University to perform an alleged trust, the property has reverted to the heirs of the donor.

It is undoubtedly a very embarrassing state of litigation, there being two suits brought in two jurisdictions, involving to a great extent the same subject-matter, and I have felt some difficulty in determining what is the true rule upon this subject, but I have come to the conclusion that it must be this: That this court has a right to go on, as I have already said, and decide all questions which legitimately flow out of the subject-matter of controversy in this case, namely, those affecting the existence of the mortgage and the right of the University of Chicago to make it, so as to reach a decree, if the case warrants it, which shall be conclusive upon the University of Chicago; that is to say, which shall prevent that corporation from ever setting up any claim or right to this property, or any claim whatever that it had not the right to execute this mortgrge. That is as far as I think it is necessary, and to that extent I think it is the duty of the court, to go. In this case is involved the fact of the making of the mortgage, the right of the University of Chicago to execute it, and the right of the court to make a decree which shall foreclose all the equities of the University of Chicago. In one sense it is true that a proceeding by foreclosure does not necessarily involve the absolute or indefeasible title to the land. The object is to foreclose whatever equity the mortgagor may have in the land. It may happen that there is a paramount title in a third party which need not be de-

cided upon the bill of foreclosure, but the question does arise as to the right of the mortgagor to execute the mortgage, and whether or not he should be foreclosed and forever barred from setting up any claim to the land covered by the mortgage.

Now, I think I may say to the counsel that there ought not to be two litigations upon the questions to which the court has adverted; that is to say, in two different courts. I admit that it is quite possible that the court may go on in this case and make a decree forever barring the equities of the University of Chicago, and preventing it from ever setting up any claim to this land, and placing this plaintiff, so far as the University of Chicago is concerned, in possession; but still there may be a right outside of that, existing in a third party, which would not be interfered with by this decree. I do not desire, if it can be avoided, to issue an injunction in this case, even if I have the right to do so. I have stated these views upon the questions of law involved, and I leave it to the counsel to determine whether it shall become necessary for the court to take any positive action.

I think it may be the right and duty of the court, if it shall become necessary, to prevent any parties in the state court litigation, who are also parties here, from going on and raising the question whether or not the University of Chicago had the right to execute this mortgage, and whether it is to be estopped by the decree of this court; for these are questions, I think, this court has the exclusive right to determine, —the court having jurisdiction of the parties and of the subject-matter,—and I think the decision of the court would be, as to the University of Chicago, binding in all courts. I leave the matter, therefore, without any order being made at this time, for the consideration of counsel.