RODGERS v. PITT et al.

(Circuit Court, D. Nevada. September 18, 1899.)

No. 658.

1. ABATEMENT—EFFECT OF TRANSFER OF PLAINTIFF'S INTEREST.

Under Gen. St. Nev. § 3038, which provides that, in case of the transfer of a party's interest in the subject-matter of a pending action, the action may be continued in the name of the original party, or the court may allow the transferee to be substituted, where a plaintiff has so transferred his interest he has no further control over the action; and the court cannot proceed therein until the transferee has appeared or has been brought in by process.

2. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—PROTECTION BY INJUNCTION.

A suit was brought in a state court by owners of lands in severalty to establish water rights in connection with such lands, which they held or claimed through a ditch owned in common. No injunction was issued, and no action taken in the suit beyond the filing of the complaint and the answer of the defendants. Several years after, while the suit was so pending, certain of the plaintiffs sold and conveyed their lands and water rights. The grantee, who was a citizen of another state, subsequently brought suit in a federal court against the same defendants and others to establish his water rights. Process was served on the defendants, who appeared without objection, and, on application of complainant, a preliminary injunction was granted. *Held* that, on acquiring the property, the complainant had his election to continue the suit in the state court, either in the name of his grantors or by being substituted as a plaintiff, as permitted by the state statute, or, not having become a party to such suit, to commence a new one, and that having elected to do the latter, and the federal court, on the appearance of the defendants, being the only court then having full jurisdiction of all the parties and the subject-matter, it was entitled to retain such jurisdiction to dispose of the controversy, and to protect it by an injunction restraining the defendants from afterwards bringing the complainant into the state court and further proceeding therein.[1]

On Demurrer to Petition for Injunction.

Rodgers, Patterson & Slack and A. E. Cheney, for complainant.
R. R. Bigelow and J. W. Dorsey, for defendants Pitt and Hauskins.

HAWLEY, District Judge. The questions presented for decision herein arise upon the presentation of a petition on behalf of the complainant for a writ of injunction against the defendants, their attorneys and agents, enjoining them from prosecuting or conducting any further proceedings in a certain suit now pending in the district court of Humboldt county, Nev., entitled "J. H. Thies, P. N. Marker, and H. C. Marker, Plaintiffs, vs. W. C. Pitt, J. T. Hauskins, and L. L.

[1] As to enjoining proceedings in state courts, see notes to Garner v. Bank, 16 C. C. A. 90, and Trust Co. v. Grantham, 27 C. C. A. 575.

Downs, Defendants." The material facts presented in the petition may be briefly stated, in their chronological order, as follows: On November 30, 1892, there was filed in the state court a complaint in a suit wherein J. H. Thies, P. N. Marker, and H. C. Marker were plaintiffs, and W. O. Pitt, J. T. Hauskins, and L. L. Downs were defendants, praying for a decree adjudging to the plaintiffs therein the first and unrestricted right to the use of the flow of the waters of the Humboldt river, 404 cubic feet per second, for the purpose of irrigating the lands of the plaintiffs, the watering of their stock, and for their domestic purposes, etc. On March 7, 1893, the defendants Pitt and Hauskins filed their answer, denying many of the averments in said complaint, and, among other things, alleged that the plaintiffs were jointly entitled, as prior appropriators, to the use of only 435 inches of water as against the defendants. No injunction was ever issued in said suit. No trial of the case was ever had. No proceedings were ever taken after the filing of the answer, until July, 1898, as hereinafter mentioned. On November 13, 1895, complainant, Arthur Rodgers, acquired the interests and became the owner of all the lands, water, and water rights theretofore belonging to, and owned by, the said P. N. Marker and H. C. Marker, mentioned and described in the suit commenced in the state court. On May 2, 1898, Arthur Rodgers filed in this court his bill of complaint against W. O. Pitt and the other defendants herein mentioned, wherein he prayed that the claim of said defendants to have, divert, or use the waters of the Humboldt river be adjudged and decreed to be invalid as against him, and that their rights thereto be adjudged and decreed subordinate and inferior to his rights to have and use the quantity of water mentioned in the bill, whenever the same is necessary for the irrigation of his land, and for watering his stock, and for his domestic use. Upon proceedings regularly had therein, this court issued a temporary injunction restraining the defendants, and each of them, from diverting, or in any manner using, the waters of Humboldt river, so as to prevent 3,500 inches thereof, measured under a 4-inch pressure, from flowing in the bed of the river to the head of the complainant's ditch during the irrigating season. 89 Fed. 420, 424. This cause is still pending, and the injunction is still in full force and effect. The defendants W. C. Pitt and J. T. Hauskins are the same persons as were the defendants in the suit in the state court. The lands, water, and water rights mentioned and described in the complaint in the state court are the same as described and mentioned in the bill of complaint filed in this court. The parties to the respective suits are not identical. On July 16, 1898, the defendants moved the state court for leave to file an amended answer in the suit therein pending, and were by the court allowed so to do. This is designated as an "amended answer," and "amended and supplementary answer." In this answer defendants in the suit petitioned the court for affirmative relief therein against the complainant, Rodgers, and against J. H. Thies and L. M. Carpenter, who were co-tenants with complainant in a ditch which supplied him and them with water to irrigate their respective lands from Humboldt river, and this part of the pleadings is variously designated as a "counterclaim," the "cross complaint," and a "cross bill." Com-

plainant was thereafter duly served with process from the state court, and divers preliminary motions and proceedings have been taken therein.

The defendants interposed a demurrer to complainant's petition, upon the ground that the petition does not state facts sufficient to entitle him to the injunction or to any relief. Is this demurrer well taken? The general rule is well settled that, where different courts have concurrent jurisdiction, the court which first acquires jurisdiction of the parties, the subject-matter, the specific thing, or the property in controversy, is entitled to retain the jurisdiction to the end of the litigation, without interference by any other court. This rule is important to the exercise of jurisdiction by the courts whose powers are liable to be exerted within the same spheres and over the same subjects and parties. There is but one safe road for all the courts to follow. By adhering to this rule, the comity of the courts, national and state, is maintained, the rights of the respective parties preserved, and the ends of justice secured, and all unnecessary conflicts avoided. Any other rule would be liable at any time to lead to confusion, if not open collision, between the courts, which might bring about injurious and calamitous results. This rule is elementary law, and a citation of all the authorities in its support would be endless and useless. The following cases, among numerous others, have been examined: Bell v. Trust Co., 1 Biss. 260, Fed. Cas. No. 1,260; Gaylord v. Railroad Co., 6 Biss. 286, 291, Fed. Cas. No. 5,284; Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, Fed. Cas. No. 14,401; Union Mut. Life Ins. Co. v. University of Chicago, 6 Fed. 443, 447; Owens v. Railroad Co., 20 Fed. 10; Judd v. Bankers' & Merchants' Tel. Co., 31 Fed. 182; Sharon v. Terry, 36 Fed. 337, 359; Gates v. Bucki, 4 C. C. A. 116, 53 Fed. 961, 966; Reinach v. Railroad Co., 58 Fed. 33, 44; Wadley v. Blount, 65 Fed. 667, 674; Cohen v. Solomon, 66 Fed. 411, 413, 414; Hatch v. Bancroft-Thompson Co., 67 Fed. 802, 807; Foley v. Hartley, 72 Fed. 570, 573; State Trust Co. v. National Land Imp. & Mfg. Co., Id. 575; In re Hall & Stilson Co., 73 Fed. 527; Gamble v. City of San Diego, 79 Fed. 487, 500; Atlantic Trust Co. v. Woodbridge Canal & Irrigation Co., Id. 501; Zimmerman v. So Relle, 25 C. C. A. 518, 80 Fed. 417, 420; In re Foley, 80 Fed. 949, 951; Thorpe v. Sampson, 84 Fed. 63, 66; Smith v. McIver, 9 Wheat. 532, 535; Hagan v. Lucas, 10 Pet. 400; Peck v. Jenness, 7 How. 612, 625; Taylor v. Carryl, 20 How. 583, 596; Freeman v. Howe, 24 How. 450, 457; Riggs v. Johnson Co., 6 Wall. 166, 196; French v. Hay, 22 Wall. 238; Id. 253; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355; Heidritter v. Oilcloth Co., 112 U. S. 294, 300, 302, 5 Sup. Ct. 135; Harkrader v. Wadley, 172 U. S. 148, 164, 19 Sup. Ct. 119; Brooks v. Delaplaine, 1 Md. Ch. 351, 354; Craig v. Hoge, 95 Va. 275, 279, 28 S. E. 317; Stearns v. Stearns, 16 Mass. 167, 170; Powers v. City Council of Springfield, 116 Mass. 84, 86; Carson v. Dunham, 149 Mass. 53, 20 N. E. 312; Insurance Co. v. Howell, 24 N. J. Eq. 238, 241; Schuehle v. Reiman, 86 N. Y. 270, 273; In re Schuyler's Steam Towboat Co., 136 N. Y. 169, 175, 32 N. E. 623; Gay v. Iron Co., 94 Ala. 303, 308, 317, 11 South. 353; Howell v. Moores, 127 Ill. 68, 79, 19 N. E. 863; Mount v. Scholes, 21 Ill. App. 192; Louden Irrigating Canal Co. v.

Handy Ditch Co., 22 Colo. 102, 114, 43 Pac. 535; State v. Chinault, 55 Kan. 326, 329, 40 Pac. 662.

The general rule, as above stated, is clear, plain, and positive. There is no room for any dispute or controversy as to its correctness, but a careful examination of the authorities shows that many of them do not march up to the full-breasted jurisdiction therein enumerated. The truth is that the language of the courts is used with reference to the facts presented in the cases before them, and is properly confined to such facts, and limited to the direct question there presented. To illustrate: Some of the authorities say, the court "which first acquired jurisdiction of the parties"; others, the court "which first acquired jurisdiction of the subject-matter"; others, "of a cause which presents the same issues and seeks the same relief"; others, the court which "first takes cognizance of the controversy"; others, the court which "first obtained possession of the property" in controversy. It is clear that this court first obtained jurisdiction over the person of the complainant. There is no pretense that the state court ever acquired any jurisdiction over him until long after the commencement of the suit and service of process in this court. Neither court has ever acquired possession of the land or water. There is no case cited by counsel which can be said to be on "all fours" with the present, and it is the duty of this court to ascertain, from the facts before it, the germ of the principle that must govern and control the disposition of the question before the court; for enough appears to make it certain that, notwithstanding the difference in the parties to the respective suits and other matters, there is need of but one trial, and the parties should not be compelled to be and appear in both courts at the same time, and litigate substantially the same questions. The proceedings in one court or the other should be stayed, at least, until the other has finally disposed of the suit before it, and then, if any question remains to be disposed of, the other court might be called upon to decide it. Union Mut. Life Ins. Co. v. University of Chicago, 6 Fed. 443, 447; Foley v. Hartley, 72 Fed. 570, 574; Zimmerman v. So Relle, 25 C. C. A. 518, 80 Fed. 417, 420; Hughes v. Green, 28 C. C. A. 537, 84 Fed. 833, 835.

Another question is equally well settled, viz.: If this court first obtained jurisdiction of this cause, it has the power and it is its duty to restrain the defendants herein from taking any proceedings in the state court which would have the effect of defeating or impairing the jurisdiction of this court. French v. Hay, 22 Wall. 250, 253; Dietzsch v. Huidekoper, 103 U. S. 494; Fisk v. Railroad Co., 10 Blatchf. 518, Fed. Cas. No. 4,830; Sharon v. Terry, 36 Fed. 337, 355; Frishman v. Insurance Cos., 41 Fed. 449; Railway Co. v. Kuteman, 4 C. C. A. 503, 54 Fed. 547, 551; Abeel v. Culberson, 56 Fed. 329, 333; President, etc., v. Merritt, 59 Fed. 6; Wadley v. Blount, 65 Fed. 667, 676; Central Trust Co. v. Western N. C. R. Co., 89 Fed. 24, 29.

The vital and controlling question, as to which court first obtained jurisdiction herein, is so important and so far reaching in its results that this court might very properly make a pro forma ruling, granting an injunction or refusing to grant it, for the sole purpose of having the case taken by appeal to a court of last resort, where the matter could

be definitely settled; but the parties have the right to demand the views of this court upon the demurrer, so as to enable them to determine what their future course may be.

In Union Trust Co. v. Rockford, R. I. & St. L. R. Co., supra, the court said:

"The main question arising is one of great delicacy, and the history of the jurisprudence of this country shows a most commendable disposition on the part of both the federal and state courts not to impinge upon each other's jurisdiction, but the delicate nature of the matter furnishes no reason why the court to which jurisdiction belongs should not firmly assert and maintain its rights."

The subject-matter of this controversy is equally within the jurisdiction of the state and federal courts. This is true of all controversies of like character, where the jurisdiction of the federal courts is invoked by persons authorized to bring suit in those courts.

When complainant acquired the land and water rights from the Markers, if he wished to litigate his rights to the waters flowing in the Humboldt river as against the defendants Pitt and Hauskins, three courses were left open to him, either of which he had the legal right to pursue, viz.: (1) He could have prosecuted that suit in the state court in the name of the original parties. (2) Or he could have made application to the state court to be substituted as a party plaintiff in the suit. Gen. St. Nev. § 3038; Walker v. Felt, 54 Cal. 386; Building Co. v. Walker (Kan. Sup.) 54 Pac. 1043; Alexander v. Overton (Neb.) 72 N. W. 212; Brown v. Kohout (Minn.) 63 N. W. 248; Harrington v. Connor (Neb.) 70 N. W. 911; Camarillo v. Fenlon, 49 Cal. 203; Plummer v. Brown, 64 Cal. 429, 430, 1 Pac. 703; Investment Co. v. Hughes, 89 Fed. 182, 185. (3) Or he could, in his own behalf, he being a nonresident of this state, commence a suit in this court to have his rights, as against the same defendants, Pitt and Hauskins, here heard and determined. He chose the latter course.

At the time of the institution of the suit in this court, the state court had not acquired any jurisdiction over the complainant. He had not appeared, and had not been served with any process therein, and that court did not have any control of the subsequent proceedings in the suit until one or the other of these steps had been taken. Gen. St. Nev. § 3057. That suit remained upon the calendar, but was held in abeyance. No action was taken therein by either party. In considering the questions involved herein, it must be understood that this court has nothing to do with the proceedings of the state court which were had subsequent to the time this court acquired jurisdiction of the pending suit. It is wholly immaterial whether they were correct or erroneous; they cannot be reviewed by this court. This court, upon the petition presented herein, can only deal with the status of the case as it existed when it acquired jurisdiction. The Markers, after disposing of their interest in the property, had no longer any direct control over the suit. Although they were the plaintiffs in the suit in the state court, they could not, after the transfer was made to the complainant, dismiss the suit. They could not do any act that would deprive the complainant herein of his rights in the premises.

In Walker v. Felt, 54 Cal. 386, this precise question was presented. The court in the course of its opinion said:

"Had the plaintiff in the action the right to dismiss it, after having transferred his interest in the subject-matter of the action to other parties? Section 385 of the Code of Civil Procedure (which is similar to section 3038, Gen. St. Nev.) provides that, in case of any transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action. Under that section, it was the right of the successors in interest in this case to prosecute this action in one of these forms. The party who had transferred his interest devested himself of any power to control the action. He could not dismiss it, because his successors had a right to have it continued. The validity of the order of dismissal in this case rests solely upon the consent of the original plaintiff, given 10 years after he had transferred his interest in the action. As he had no right to interfere with the action, the court, on being advised of that, should have vacated the order based upon it."

In cases where there has been a transfer of the property pending the suit, the substitution, under the provisions of the statute, of the person who has acquired an interest in the property, is a matter that rests solely with the plaintiff and the person to whom such transfer was made. The defendants cannot have such substitution made. The change of parties can only be set in motion by the plaintiffs or their vendee, and the plaintiffs are not authorized to act in opposition to the rights of the transferee. Hestres v. Brennan, 37 Cal. 385, 388; Smith v. Harrington (Wyo.) 27 Pac. 803; Packard v. Wood, 17 Abb. Prac. 318, 322; Chisholm v. Clitherall, 12 Minn. 375, 379 (Gil. 251); Hirshfeld v. Fitzgerald, 157 N. Y. 166, 177, 51 N. E. 997. This was therefore the only court which, at the time of the commencement of this suit and of the service of process and appearance of the defendants herein, had full and complete jurisdiction of the parties and the subject-matter of the controversy and of the property affected by the litigation.

It is, of course, true that there was at that time a suit pending in the state court in which steps could have been previously taken that would have invested that court with full jurisdiction to hear and determine the merits of this cause. It is not, however, what might have happened,—what steps might have been taken,—but the pivotal question is, what was the condition at that time, under the steps that had been taken? This, it seems to me, is the true test to be applied to the facts set forth in this petition. The jurisdiction of a cause does not attach, within the meaning of the general rule, by the filing of a complaint and the issuance of a summons. It attaches only upon the service of process, and it is the duty of the court whose process is first served to retain the cause. In other words, it is the duty of the court which first obtains full and complete jurisdiction over the whole case to keep control of it, to the exclusion of the other court that had not obtained such full jurisdiction, and to grant the relief prayed for in the bill. Bell v. Trust Co., 1 Biss. 260, Fed. Cas. No. 1,260; Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, Fed. Cas. No. 14,401; Wilmer v. Railroad Co., 2 Woods, 409, Fed. Cas. No. 17,775 (opinion of Bradley, Circuit Justice); Union Mut. Life Ins. Co. v. University of Chicago, 6 Fed. 443, 447; Owens v. Railroad Co., 20 Fed. 10, 12; Wheeler v. Walton & Whann Co., 65 Fed. 720,

722; Riggs v. Johnson Co., 6 Wall. 166, 187, 196; Craig v. Hoge, 95 Va. 275, 280, 28 S. E. 317.

In Owens v. Railroad Co., and Central Trust Co. v. Western N. C. R. Co., supra, divers suits were brought at various times in different courts, both federal and state, praying for the appointment of a receiver and for the foreclosure of a mortgage. Some of the suits were identical, both as to the parties and as to the relief prayed for; others, the parties and the relief asked for were in some respects different, but substantially the same questions were involved in all the suits. There the question arose "as to which court first obtained jurisdiction over the subject-matter in controversy." The court, in discussing this question, among other things said:

"It will be observed that every step necessary to complete the jurisdiction of this court was taken before process was served on the defendant company, under the bill filed in the Sixth circuit. But it is claimed that the filing of the bill first in the Sixth circuit, which in this proceeding is the commencement of the suit, confers jurisdiction. This, of necessity, cannot be so. Other necessary steps must be taken to bring the parties before the court, before a complete jurisdiction is acquired. Until that is done, the court could make no order that would affect the rights of a party. The usual mode is by service of process. It may be, and in some cases is, done by an order of the court directing a seizure of the property, when some urgent necessity requires it, before service is had. In this case no such order was made, and we must therefore look to the service of process to ascertain which court first acquired jurisdiction. It is true that process was sued out first under the bill filed in the Sixth circuit, but service of process was first had under the one filed in this circuit. We therefore conclude that, as between these proceedings, the process of this court being first served on the defendant company, it gave this court full, complete, and prior jurisdiction over it, and the right to grant the relief prayed for in the bill. * * * In the bill filed in this court it was distinctly alleged and established by proof that one of the complainants had requested the trustee in the first mortgage, the Central Trust Company, to bring a suit of foreclosure of a mortgage, and the trustee refused to take any step or to exercise any of the discretionary powers for that purpose. It is now the settled law that, whenever a trustee neglects or refuses to institute proceedings for the protection of bondholders secured by a mortgage, the bondholders themselves may begin proceedings for that purpose. This was done by the present complainants on behalf of themselves and other bondholders, and, the case being first fully matured in this court, by reason of that fact the court in this circuit first took cognizance of the subject-matter in controversy, acquiring full and complete jurisdiction over it, and, as an incident to that jurisdiction, has possession and control over any property which may be the subject-matter of the dispute, to the end of the litigation."

In Taylor v. Taintor, 16 Wall. 366, 370, the court said:

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted. * * * It is, indeed, a principle of universal jurisprudence that, where jurisdiction has attached to person or thing, it is, unless there is some provision to the contrary, exclusive in effect until it has wrought its function."

In Buck v. Colbath, 3 Wall. 334, 341, the court declared that:

"Whenever property has been seized by an officer of the court by virtue of its process, the property is to be considered as in the custody of the court, and under its control, for the time being, and no other court has a right to interfere with that possession."

In Merritt v. Steel-Barge Co., 24 C. C. A. 530, 534, 79 Fed. 228, 231, the court said:

"The doctrine in question is not limited in its application to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all other suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of specific personal or real property. In cases of the latter kind, the rule is that the tribunal which first acquires jurisdiction of the cause by the issuance and service of process is entitled to retain it to the end, without interference or hindrance on the part of any other court. And this rule, in its application to federal and state courts, being the outgrowth of necessity, is 'a principle of right and of law,' which leaves nothing to the discretion of a court, and may not be varied to suit the convenience of litigants."

The difference in obtaining jurisdiction in suits in personam and in rem, and the distinction between the two classes of cases, are clearly pointed out and discussed in Cooper v. Reynolds, 10 Wall. 308, 316, and Pacific Coast S. S. Co. v. Bancroft-Whitney Co., 94 Fed. 180, 185. If the proceedings involve the determination of the personal liability of the defendant, he must, as hereinbefore stated, be brought within the jurisdiction by service of process within the state or district, or by voluntary appearance. If the proceeding be in rem, the res must be seized or attached, and be, at the time of seizure or attachment or other equivalent writ or process, within the jurisdiction of the court. In this class of cases the defendant is not personally bound by the judgment beyond the property in question, and it is wholly immaterial whether the proceedings against the property be by an attachment or by a bill in equity. It must be substantially a proceeding in rem. The jurisdiction may be obtained by any acts which are of equivalent import to those stated above, and stand for and represent the dominion of the court over the property and subject it to the control of the court. The jurisdiction of the court over the controversy is founded on the presence of the property, and, like a proceeding in rem. it becomes conclusive against the absent owners or claimants, as well as over the present contestants, if there be any. Boswell's Lessee v. Otis, 9 How. 336, 348; Pennoyer v. Neff, 95 U. S. 714, 724; Heidritter v. Oilcloth Co., 112 U. S. 294, 300, 5 Sup. Ct. 135; Arndt v. Griggs, 134 U. S. 316, 324, 10 Sup. Ct. 557; Shields v. Coleman, 157 U. S. 168, 178, 15 Sup. Ct. 570.

The suit in question is not a suit in rem. It may be that the nature of the suit comes within the general classification of suits quasi in rem. Brown, Jur. § 70 et seq.; Freeman v. Alderson, 119 U. S. 185, 187, 7 Sup. Ct. 165. But, whatever it may be called, the facts are that the state court had no independent or exclusive possession of the property involved herein. It had not issued any process against the property. No attachment had reached it. No receiver had been appointed to take charge of, manage, and control it. No injunction had been issued to restrain defendants from the use of any of the waters flowing in the Humboldt river. Neither the court, nor any of its officers, were in possession thereof. There was no seizure of the res. It cannot, therefore, be said that the state court first obtained such jurisdiction over the property as to entitle it, to the exclusion of this court, to hear and determine the controversy herein.

In Ball v. Tompkins, 41 Fed. 486, 490, the court, in discussing the question as to the nature and character of the possession of the courts, national and state, which excludes the exercise of authority over the subject or thing by the other, among other things said:

"The possession contemplated as sufficient to make it exclusive is that which the court by its process, or some equivalent mode, has, either for the direct purpose of the proceeding, or for some other purpose ancillary to the main object, drawn into its dominion and custody some thing. That thing may be corporeal or incorporeal,—a substance or a mere right. But a controversy, a question, an inquiry, is not such a thing. These may be the subject-matter of jurisdiction in a pending cause, which often proceeds from the beginning to the judgment without the court's having taken actual dominion of anything. But there is no exclusive jurisdiction over such a matter. The result may be a judgment which will establish a right, but the court has not had any possession. * * * The control which each court has over its own process has always been found adequate to prevent mischief from diverse judgments in the several jurisdictions. But, in proceeding on its way, whenever either court finds that the other has already taken actual dominion over some objective thing related to the subject, it will let the thing alone, so long as that dominion is retained, and proceed, if there be enough material besides to support the exercise of its jurisdiction, and the pursuit may reach fruit. If not, it will stop."

There is another phase of this case which has been merely referred to that should be further noticed. The complainant could have submitted himself to the jurisdiction of the state court without the trouble, cost, or expense of bringing an independent suit. It may be that it would have been better for all parties if he had done so; but, unless he was prohibited by law from bringing the suit in this court, he had the right so to do, because this court had equal and concurrent jurisdiction over the parties and the subject-matter of the controversy. Whatever the rights of the defendants may have been at the time of the institution of the suit in this court, if they had taken proper steps to stay the proceedings in this court, as a matter of comity between the state court and this court, it is clear to my mind that, by coming into this court after service of process upon them and submitting themselves to its jurisdiction, they waived their rights to have the case tried in the state court. The defendants ought not, after voluntarily submitting themselves to the jurisdiction of this court, and contesting the proceedings herein, and obtaining what they deemed to be an adverse ruling, to then endeavor to have a change of the place of trial, and take their chances in another court, on the ground that they might have brought the complainant within the jurisdiction of the state court, had they taken the necessary steps so to do. Jurisdiction over the parties and subject-matter cannot, of course, be conferred upon a court by mere consent. But, where a court has jurisdiction over the case, objections to the mere mode of the acquisition of such jurisdiction may be, and are, waived when no timely objections are made thereto. McBride v. Plow Co., 40 Fed. 162; Jewett v. Trust Co., 45 Fed. 801; Walker v. Bank, 5 C. C. A. 421, 56 Fed. 76, 81; Smith v. Railroad Co., 64 Fed. 1, 3; Railway Co. v. Brow, 13 C. C. A. 222, 65 Fed. 941, 944, 949; Noonan v. Railroad Co., 68 Fed. 1; Foley v. Hartley, 72 Fed. 570, 574; Long v. Long, 73 Fed. 369; In re Foley, 76 Fed. 390, 392; Collins v. Stott, Id. 613;

Toland v. Sprague, 12 Pet. 300, 331; Bushnell v. Kennedy, 9 Wall. 387, 393; Bank v. Morgan, 132 U. S. 141, 145, 10 Sup. Ct. 37; Railway Co. v. McBride, 141 U. S. 127, 132, 11 Sup. Ct. 982; Railroad Co. v. Cox, 145 U. S. 593, 603, 12 Sup. Ct. 905; Trust Co. v. McGeorge, 151 U. S. 129, 133, 14 Sup. Ct. 286; Improvement Co. v. Gibney, 160 U. S. 217, 219, 16 Sup. Ct. 272; Robinson v. Caldwell, 165 U. S. 359, 362, 17 Sup. Ct. 343; Brown v. Campbell, 110 Cal. 644, 649, 43 Pac. 12; Railway Co. v. Flanagan, 57 N. J. Law, 236, 238, 30 Atl. 476; Jolly v. Pryor (Tex. Civ. App.) 33 S. W. 889; Kincaid v. Storz, 52 Mo. App. 564, 570; Larkin v. Scranton City, 162 Pa. St. 289, 293, 29 Atl. 910.

The subsequent proceedings taken by the defendants in the state court were in the nature of an attempt to there obtain control of a suit in order to deprive this court of the complete jurisdiction which it first acquired over the parties and the subject-matter. This is not permissible. If it could be allowed, it would virtually amount to an abrogation, instead of the enforcement, of the general rule which it is the duty of all courts to strictly and faithfully adhere to. The pendency of a prior suit in a state court is not necessarily a bar to a suit in a federal court, even between the same parties, involving the same issues. Stanton v. Embrey, 93 U. S. 548, 554; Gordon v. Gilfoil, 99 U. S. 168, 178; Ball v. Tompkins, 41 Fed. 486, 490; Briggs v. Stroud, 58 Fed. 717, 720; Marshall v. Otto, 59 Fed. 249, 252; Wilcox & Gibbs Guano Co. v. Phœnix Ins. Co., 61 Fed. 199; First Nat. Bank v. Duel Co., 74 Fed. 373, 374; Short v. Hepburn, 21 C. C. A. 252, 75 Fed. 113; Marks v. Marks, 75 Fed. 321, 332; Holton v. Guinn, 76 Fed. 96, 101. Conflict of jurisdiction and embarrassment are always avoided by the rule of comity under which the court first obtaining full jurisdiction is allowed to proceed in a legal and orderly way to a final hearing of the case. The national and the state courts do not belong to the same system, so far as their jurisdiction is concurrent. Although they co-exist in the same space, they are wholly independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane. As was said by Chief Justice Taney in Ableman v. Booth, 21 How. 506, 516:

"The sphere of action appropriated to the United States is as far beyond the reach of the judicial process issued by a state judge or a state court as if the line of division was traced by landmarks and monuments visible to the eye."

See, also, Riggs v. Johnson Co., 6 Wall. 166, 193; Gay v. Iron Co., 94 Ala. 303, 323, 11 South. 353.

In Covell v. Heyman, 111 U. S. 176, 182, 4 Sup. Ct. 355, 358, the court said:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but, between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience."

Guided by the analogies of the decided cases and by the principles of law announced therein, and the reason of the rule relating to the comity of courts and the necessity of harmonious and orderly proceed-

ings to be pursued by the respective courts in relation thereto, my conclusion is that, upon the facts stated in the petition, this court first obtained full and complete jurisdiction of the parties and subject-matter of the controversy herein.

The demurrer is overruled. The preliminary injunction issued upon the filing of this petition will remain in full force and effect until the further order of this court.