## Case No. 16,069.

### UNITED STATES v. POPE.

[24 Int. Rev. Rec. 29; 3 Cin. Law Bul. 30.] [1]

District Court, D. Massachusetts. Jan. 8, 1878.

EXTRADITION—ARREST IN ONE DISTRICT FOR TRIAL IN ANOTHER—INDICTMENT AS EVIDENCE.

1. Where a person is arrested and brought before a judge or commissioner to be held to bail for trial in another district, a certified copy of the indictment found in such other district is competent evidence against the defendant; but if such indictment be so inconsistent that an impossible offence is set forth therein, it is not evidence authorizing such judge or commissioner to hold the defendant to bail.

[Cited in U. S. v. Brawner, 7 Fed. 88; U. S. v. Rogers, 23 Fed. 661.]

2. The indictment in this case charged in substance that on the 10th day of June, 1874, in Louisiana, the defendant and others conspired to defraud the United States by procuring to be entered against the United States in the court of claims, an unjust judgment on the 18th day of May, 1874, and further sets forth that such judgment was in fact rendered on said 18th day of May   *Held*, that such indictment is no evidence of guilt.

At law.

P. Cummings, Asst. U. S. Atty.

C. Allen, for defendant.

LOWELL, District Judge. On the 6th day of June, 1876, an indictment was found in the circuit court of the United States for the district of Louisiana against August P. Noblom, Henry Peychaud, Theodore Valiade. and Robert H. Shannon, of the district of Louisiana, George Taylor and Oliver S. Lovell, of the District of Columbia, and Frederick G. Pope of the district of Massachusetts, alleging: That the defendants in and within the state and district of Louisiana, on the 10th day of June, 1874, conspired together with one Bouchard and others unknown to the grand jurors, with the intent and purpose to cheat and defraud the United States of the sum of $296,000; that in 1869 said Noblom together with one Bellocq and one Roy, claiming to be co-partners in New Orleans under the firm of Bellocq, Noblom & Co., presented to the court of claims at Washington a petition which is fully set forth in the indictment. Its substance is that the petitioners had, before April, 1861, made large advances on 1,851 bales of cotton which had afterwards been seized, in April and May, 1863, by the military authorities of the United States, and sold by the treasury agents, and the proceeds paid into the treasury of the United States; that the cotton

was never abandoned nor forfeited, and was not liable to confiscation under any act of congress and the petitioners claimed the proceeds of said cotton, or at least the amount of their advances, averring that they had never aided the Rebellion. The indictment, proceeds to set out that a supplemental petition was filed in the court of claims by the defendant Peychaud, averring himself to be the assignee in bankruptcy of said firm, and repeating the allegation of the original petition; that issues were framed on this last petition. and the same was pending in the court of claims at the December term. 1873; that the defendants and the other conspirators at Louisiana on the 1st day of June, 1874, aforesaid, as the means of carrying out their conspiracy conspired to prosecute said action in said court of claims to a final judgment by false testimony to be presented to said court and thereby to procure an unjust judgment to be rendered against the United States for $296,000, and cause it to be executed and the money paid,—the conspirators well knowing that said petitions were in all material respects untrue, and that no judgment ought to be rendered thereon against the United States; that Peychaud at Louisiana. September 10, 1874, in pursuance of the conspiracy, permitted the action to be prosecuted to final judgment, which judgment was duly made and entered at Washington. May 18, 1874. It then sets out the judgment in favor of Peychaud as assignee in bankruptcy of said firm for the proceeds of 1,542 bales of cotton amounting in all to $296,064; that Peychaud, knowing the judgment to be wrong, etc., demanded and procured payment; that his comrade, Taylor. knowing. etc., agreed to receive part of the proceeds, etc. That the defendant Valiade (without date), gave testimony which was false; finally that the defendant, Pope. in October, 1873 (in fact, 1872), in pursuance of the conspiracy gave a deposition in Boston authenticating a certificate made by him in 1863, that as captain in a regiment of volunteers and by order of his commanding officer, he had seized four bales of cotton belonging to P. Noblom and deposed that the certificate was true, whereas he well knew that it was false and untrue and a fabrication of his own, and that it was made to aid the defendants in their conspiracy to obtain an unjust judgment in the court of claims.

The defendant, Pope, was complained of before Mr. Commissioner Hallett some months since in behalf of the United States, who asked that he might be ordered to give bail for his appearance at New Orleans to answer to the said indictment. After a hearing the commissioner discharged the defendant. Lately a fresh complaint was made before the district judge, and a hearing was had. The United States introduced a certified copy of the indictment, and evidence tending to identify Pope as the per-

[1] [3 Cin. Law Bul. 30, contains only a partial report.]

son indicted. The defendant produced evidence tending to show that he had not been in Louisiana since 1866, at the time he left the army; that he had seized a large amount of cotton in 1863 by order of his superiors, who required him to give receipts therefor when demanded; that he was not known or believed to be a friend of Noblom, and was known to have expressed publicly before the magistrate when his deposition was taken in October, 1872 (not 1873), his disbelief in the loyalty of the claimants. All this evidence for the defendant was objected to by the district attorney, and was admitted only de vene.

From the very great pressure of business in the court this case has been delayed longer than I intend that any case shall be if I can prevent it. I know of no statute which authorizes the warrant of any court of the United States to be served on a defendant out of the district in which the indictment is found in any criminal case; though all witnesses and defendants in some few civil cases may be so served with process. I mean there is no statute which in terms authorizes such a warrant, and the weight of opinion is decidedly against the existence of such a power. See In re Alexander [Case No. 162], and the cases and opinions there cited; U. S. v. Haskins [Id. 15,322]; U. S. v. Yacobi [Id. 15,460]; opinions of Miller and Love in Re Bailey [Id. 730]. In these cases and all others that I have seen the mode adopted to procure the attendance of a defendant who is found out of the district where the offence is said to have been committed, is to apply to a commissioner or judge under the judiciary act, section 33 (1 Stat 91), now re-enacted in Rev. St. § 1014, and produce before him the evidence of criminality precisely as if the defendant's crime was alleged to have been committed within the district. Such applications are very common, and such is the case now before me. The usual course is to produce either witnesses or affidavits in behalf of the United States. It has been seriously doubted whether a copy of an indictment is evidence in such an examination. I decided in Alexander's Case, ubi supra, that it is. This was a very convenient decision for the United States and a sound one, but it rests rather on long usage than on any principle of law, because, generally speaking, an indictment is evidence of nothing but its own existence, unless there is some statute giving it a greater effect. It is but secondary evidence after all, or rather a statement of the result of evidence, and the better practice is to give primary evidence of criminality.

In extradition between the United States and other nations copies of the warrant and of the depositions on which it was founded are made evidence. Rev. St. § 5271. And in extradition between the states a copy of the indictment or of an affidavit is suffi-cient. Rev. St. § 5278. In both these classes of cases the executive authority, whether of the state or nation, has an ultimate discretion whether to surrender the supposed criminal or not; and they often refuse, though the papers are in due form and unimpeached, if there is good reason to believe that some ulterior object or sinister design is concealed under the regular forms. Examples of this are historical. Congress not having seen fit to authorize a bench warrant to issue out of the court in which the indictment is found, it becomes the duty of the magistrate to examine the evidence carefully as in any domestic case. Remarks of an eminent judge on this point will be found in Re Buell [Case No. 2,102]. In that case Judge Dillon, affirming Judge Treat, refused to issue his warrant, though the defendant was admitted to have written and published a criminal libel, because it did not clearly appear that he had published it in the District of Columbia, where the indictment had been found. When a fresh indictment was found, Judge Treat refused a warrant because the court in which the indictment was pending did not appear to have jurisdiction of the charge. Same case, note at end. Judge Blatchford refused such a warrant though everything was regular, and the information appeared valid, because he held that the law authorizing such an information was unconstitutional. In re Dana [Case No. 3,554]. Judge Withey refused to hold for trial a defendant who had been sent to his district by the judge of another district upon evidence which was merely the copy of an information not under oath. U. S. v. Shepard [Id. 16,273].

The only evidence in behalf of the government in this case is a copy of the indictment. It was proved by clear and uncontradicted testimony that this defendant was not in Louisiana when he is alleged to have conspired with the others to cheat the United States. Assuming that there may be a constructive presence in Louisiana of a person actually in Boston, there is no evidence of it in this case. The indictment nowhere states, excepting argumentatively, that any of the papers, affidavits, petitions, or anything else were false and fraudulent; but I should not regard that as very important in a case of this sort, where the indictment is merely evidence. It is open to more serious objections. Briefly stated, it charges the defendants with conspiring, June 10, 1874, to recover a judgment, which was entered May 18, 1874; and it charges this defendant with giving a deposition in 1873, which both sides admit he gave in 1872, to aid a conspiracy which was not formed until June, 1874. The indictment being filed June 6, 1876, it is likely that the conspiracy is laid June 10, 1874, to avoid the bar of the statute of limitations, which was probably supposed to protect the defendants in two years, though the statute of April 13, 1876, which

had not then been published, extends it another year. The conspiracy, if there were one, would probably be formed before the false petition was filed in the court of claims in 1869, and must have been formed before May 18, 1874, when that court gave the judgment which it was the object of the conspiracy to procure. However this fact may be, the allegation of the date of the conspiracy involves the indictment in contradictions which, if they are errors, must be corrected by evidence, and none is offered. The indictment itself must stand or fall by its own dates; and if they are repugnant or insensible the pleading is fatally defective. Com. v. Hitchings, 5 Gray, 482; U. S. v. Fox [Case No. 15,156]. So where it is produced as evidence it must be consistent and sensible, or it fails to prove guilt. Upon fresh evidence the government can apply again, as they have already applied twice, for an order for bail or committal. The evidence for the defence, though I consider it admissible, has not affected my decision.

I hold that Mr. Hallett was well warranted in discharging the defendant if the evidence before him was a copy of the indictment, as I suppose it was. The indictment charges the defendant with the impossible crime of conspiring in June to procure a false judgment to be entered in the preceding May, and to have done acts in October to aid a conspiracy which was formed in the following June. It is therefore worthless as evidence of a conspiracy, just as an affidavit would be which contained such inconsistencies. Whether, if these were proved to be clerical errors, it would be my duty to send the defendant to be tried in another district I do not intend to decide. It might possibly be so if it were shown that a fresh indictment might be found upon the evidence before me.

Defendant discharged.