UNITED STATES v. LEE.

(District Court, S. D. California. January 14, 1898.)

No. 1,038.

1. COURTS—JURISDICTION OF CRIMINAL CASE—WHEN ACQUIRED.
Under Act Cong. March 1, 1895, relating to the United States court in the Indian Territory, and providing (section 9) that after September 1, 1896, such court should have exclusive original jurisdiction of all offenses against the laws of the United States committed in the territory, "except such cases as the United States courts at Paris, Texas, Fort Smith, Arkansas, and Fort Scott, Kansas, shall have acquired jurisdiction of before that time," an outside court named did not acquire jurisdiction of a case by reason of the commission of the offense within its jurisdiction, nor merely by the return and filing of an indictment therefor, but the defendant must also have been arrested upon its process before the date fixed.

2. CRIMINAL LAW—REMOVAL OF PRISONER—DISCHARGE.
On an application for removal of a prisoner, under Rev. St. § 1014, where the only ground for the warrant is an indictment pending in the district court of the district to which the removal is sought, and it appears from said indictment that the court has no jurisdiction of the alleged offense, the defendant should be discharged.

Application by the United States, under Rev. St. § 1014, for a warrant for the removal of Noah Lee to the Eastern district of Texas for trial.

Frank P. Flint, U. S. Atty.

Curtis D. Wilbur, for defendant.

WELLBORN, District Judge. On May 28, 1895, an indictment was found in the district court of the United States for the Eastern district of Texas, against the defendant, and two other persons jointly indicted with him, charging that, on June 24, 1893, in Atoka county, in the Choctaw Nation, in the Indian Territory, the same constituting a part of the said district, defendants made an assault upon one W. P. Danforth, with the intent then and there to kill the said Danforth, and further charging, in a second count, that defendants, at the time and place named, made an assault upon certain and divers persons, whose names were unknown to the grand jurors, with intent then and there to kill said persons. On this indictment a capias was issued September 13, 1897, by the clerk of said court to the marshal of said district, for the arrest of the defendant, Lee. This defendant, having been committed in this district, the Southern district of California, on November 21, 1897, by George B. Cole, a United States commissioner, the government now asks for his removal to said Eastern district of Texas.

On this application the government has submitted said capias and certified copies of said indictment and commitment. The defendant has offered his own affidavit to the effect that, at the time of his examination by said commissioner, he was not informed of his right to the aid of counsel, nor was he represented by any one; that no witnesses were examined, and no proceedings had before said commissioner, other than reading the purported copy of the indictment, and asking defendant if his name was Noah Lee. In opposition to defendant's affidavit, the government has filed an affidavit of the

commissioner, which states, among other things, that at the preliminary examination defendant admitted that he was the Noah Lee referred to in the complaint, on which had been issued the warrant for his arrest, and announced his readiness for the examination, and requested that the same be proceeded with; that, in reply to the inquiry whether or not he had or wished an attorney, he said he would wait until he reached Los Angeles before he engaged one; that the government then, without objection, introduced in evidence and read to defendant a certified copy of said indictment in full, including all indorsements thereon; and, that, before said examination was had, defendant was apprised of all his legal rights. On the hearing before me the questions involved in the application for a warrant of removal were orally argued, and briefs have been since submitted both by the government and the defendant.

Said application is made under section 1014 of the Revised Statutes of the United States, which is as follows:

"Sec. 1014. For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had." Rev. St. U. S. (2d Ed.) p. 189.

To authorize the warrant of removal now applied for, three things should be made to appear: (1) That the defendant has been committed in this district, the Southern district of California, to answer the indictment preferred against him in the Eastern district of Texas; (2) that said indictment sufficiently charges an offense against the United States; (3) that the United States district court for the Eastern district of Texas has jurisdiction over said offense. The first of these requirements is clearly expressed in the statute, —said section 1014; the other two, although not expressed in terms, are necessarily implied. In re Doig, 4 Fed. 193; U. S. v. Pope, 27 Fed. Cas. 593; In re Buell, 4 Fed. Cas. 587; In re Greene, 52 Fed. 104; Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. 407; U. S. v. Rogers, 23 Fed. 658; In re Wolf, 27 Fed. 606; In re Terrell, 51 Fed. 213; U. S. v. Dana, 68 Fed. 886.

There is no claim that the indictment fails to charge an offense against the United States, but defendant resists removal on the grounds that the district court for the Eastern district of Texas has no jurisdiction of the offense charged in said indictment, and that there has not been a lawful commitment in this district. The jurisdictional question just stated involves the construction of an act of congress, entitled "An act to provide for the appointment of ad-

ditional judges of the United States court in the Indian Territory, and for other purposes," approved March 1, 1895. 2 Supp. Rev. St. U. S. p. 392. Said act, among other things, divided the United States court in the Indian Territory into three judicial districts, and provided for the appointment of two additional judges of said court. Section 9 of said act is as follows:

"Sec. 9. That the United States court in the Indian Territory shall have exclusive original jurisdiction of all offenses committed in said territory, of which the United States court in the Indian Territory now has jurisdiction, and after the first day of September, eighteen hundred and ninety-six, shall have exclusive original jurisdiction of all offenses against the laws of the United States, committed in said territory, except such cases as the United States court at Paris, Texas, Fort Smith, Arkansas, and Fort Scott, Kansas, shall have acquired jurisdiction of before that time;

"And shall have such original jurisdiction of civil cases as is now vested in the United States court in the Indian Territory,

"And appellate jurisdiction of all cases tried before said commissioners, acting as justices of the peace, where the amount of the judgment exceeds twenty dollars.

"All laws heretofore enacted conferring jurisdiction upon United States courts held in Arkansas, Kansas, and Texas, outside of the limits of the Indian Territory, as defined by law, as to offenses committed in said Indian Territory, as herein provided, are hereby repealed, to take effect on September first, eighteen hundred and ninety-six; and the jurisdiction now conferred by law upon said courts is hereby given from and after the date aforesaid to the United States court in the Indian Territory:

"Provided, that in all criminal cases where said courts outside of the Indian Territory shall have, on September first, eighteen hundred and ninety-six, acquired jurisdiction, they shall retain jurisdiction to try and finally dispose of such cases. Every case, civil or criminal, pending in the United States court in the Indian Territory shall be tried and disposed of by the court where the same is pending, unless the venue therein be changed as herein provided."

The United States court in the Indian Territory was first established by an act of congress, approved March 1, 1889, and entitled "An act to establish a United States court in the Indian Territory, and for other purposes." 1 Supp. Rev. St. U. S. p. 670. Said act, however, provided that a certain portion of the Indian Territory, whose boundaries were defined in the act, should be annexed to, and constitute a part of, the Eastern district of the state of Texas, for judicial purposes, and that terms of the circuit and district courts of the United States for said Eastern district of Texas should be held at stated times at the city of Paris, in said state, and that said courts provided to be held at Paris should have exclusive original jurisdiction of all offenses committed against the laws of the United States within the limits of that portion of the Indian Territory attached to said Eastern judicial district of Texas by the provisions of said act, of which jurisdiction was not given by said act to the court which it established in said territory.

Defendant contends that the words, "acquired jurisdiction," as used in section 9 of the act of March 1, 1895, imply, not only the finding of an indictment, but an arrest and arraignment,—in other words, that jurisdiction, under said section, is retained by the "outside" courts only "as to cases at issue" on September 1, 1896, and, that, inasmuch as the defendant at that time had neither been arraigned nor arrested, the district court for the Eastern district of Texas has now no jurisdiction of the offense. The government, on

the other hand, maintains that said words, "acquired jurisdiction," refer to the subject-matter, but not to the person, and therefore that the district court for the Eastern district of Texas acquired jurisdiction when the offense was committed, June 24, 1893, or when the indictment was presented in court and placed on the files thereof, May 28, 1895.

At the oral argument the inclination of my mind was adverse to defendant's contention, but a closer examination of said acts of congress and a more extended review of precedents satisfies me that my first impression, that the arrest of the defendant was not essential to the jurisdiction of the court in Texas, was wrong. It is true that the word "jurisdiction" does sometimes refer to the subject-matter. i. e. "the nature of the cause of action or relief sought; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in the authority ispecially conferred." "Jurisdiction," however, in the clause now under consideration, "shall have acquired jurisdiction," was not used in the sense last mentioned; for jurisdiction of that sort would be acquired by the mere commission of the crime, and, if that were so, the courts "outside" the territory would have retained jurisdiction over all offenses committed prior to the date when the jurisdiction of the court in the territory was to take effect, which idea is wholly inconsistent with other clauses of said section. If it had been intended that the jurisdiction of the courts "outside" of the territory should be retained over all offenses committed prior to the date when the jurisdiction of the court in the territory, transferred thereto by said section, was to take effect, it would have only been necessary for the first paragraph of the section to have provided that the court in the territory, "after the first day of September, eighteen hundred and ninety-six, shall have exclusive original jurisdiction of all offenses    *    *    *    committed in said territory thereafter." It will be observed that, to meet the hypothesis suggested, I have substituted "thereafter" for the clause, "except such cases as the United States court at Paris, Texas, Forth Smith, Arkansas, and Fort Scott, Kansas, shall have acquired jurisdiction of before that time." Again, since the word "jurisdiction," in that clause of the first paragraph of said section which confers jurisdiction on the court in the territory, refers to "offenses,"—that is, the subject-matter.—if the words "acquired jurisdiction," in the succeeding clause, "except such cases as the United States court at Paris, Texas, Fort Smith, Arkansas, and Fort Scott, Kansas, shall have acquired jurisdiction of before that time," were construed as referring also to the subject-matter, the exception would be as broad as the conferring clause, and, both clauses thus becoming nugatory, the whole object of the paragraph, so far as it purports to transfer jurisdiction from the "outside" courts to the court in the territory, would be defeated. Furthermore, if the word "jurisdiction" in the proviso to said section referred to the subject-matter, as does the word "jurisdiction" in the fourth paragraph, then the object of the proviso could have been fully accomplished by using, instead thereof, the simple expression "except as to cases then pending."

There are yet other features of the statute which indicate that the words "acquired jurisdiction" refer, not to the subject-matter, but to the person. For instance, the word "cases," in said proviso, means "actions." This appears, not only from its immediate context, but from a comparison of the proviso, wherein the word occurs, with the preceding clause, wherein occurs the word "offenses," and, further, from a comparison of the two clauses of the first paragraph of said section 9, wherein said words also respectively occur. "Criminal action" is thus defined: "The proceeding by which a party charged with a public offense is accused and brought to trial and punishment is known as a criminal action." Pen. Code Cal. § 683. Although this definition is statutory, I think it gives correctly the general meaning of "criminal action." There cannot, of course, be a criminal case, or action, until an indictment has been found. Post v. U. S., 161 U. S. 583, 16 Sup. Ct. 611. The words "acquired jurisdiction," in the proviso, then, imply more than the mere filing of an indictment, since the language is, "That in all criminal cases where said courts * * * shall have acquired jurisdiction." Two things are thus declared essential to the jurisdiction, which is retained in the "outside" courts: (1) A criminal case,—that is, the finding of an indictment; (2) the acquirement by the court of jurisdiction in said case. Since there is no property involved in a criminal case, the only jurisdiction which could be acquired, after the finding of an indictment, is jurisdiction of the defendant's person. Again, in the last sentence of said section, which provides for the trial of certain cases in the court in the territory, the words "acquired jurisdiction," employed in the proviso immediately preceding, are changed to "every case, civil or criminal, pending." This change of language imports change of meaning. If it had been intended that the "outside" courts should retain jurisdiction in all cases where indictments had been found, such intent, as already stated, could have been readily and unequivocally expressed by using, instead of the proviso, the simple expression, "except as to cases then pending"; and it is incredible that an elaborate proviso would have been framed for the purpose indicated, when, as appears from the act itself, the simpler terms were present in the mind of congress, and devoted to another and appropriate use. The words "acquired jurisdiction," therefore, denote something more than the pendency of a case, and, as already stated, the only other element of jurisdiction they could possibly include is the service of process upon the defendant, or, more accurately, his arrest under a capias. The several clauses of the act of March 1, 1895, to which I have adverted, are unfavorable to the contention of the government, and support strongly the theory that defendant's arrest was essential to the acquirement of jurisdiction in the case against him.

Precedents, based upon facts precisely similar to those here involved, have not been cited, either by the defendant or the government, nor have I been able to find them, although my researches have been diligent. I have found, however, numerous decisions on a kindred question, which, I think, are conclusive here. The question I refer to is the general rule of law, applicable to criminal as

well as civil cases, that, when different courts may entertain cognizance of the same subject, that court which first acquires will retain jurisdiction until the litigation is ended. In construing this rule, the unbroken current of authorities is to the effect that priority of jurisdiction is determined by the date of the service of process. Craig v. Hoge (Va.) 28 S. E. 317; Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 358, note 3, 76 Fed. 296; Gaylord v. Railroad Co., 10 Fed. Cas. 121; Bell v. Trust Co., 3 Fed. Cas. 110; Union Mut. Life Ins. Co. v. University of Chicago, 6 Fed. 443; Ownes v. Railroad Co., 20 Fed. 10; Foley v. Hartley, 72 Fed. 570; Wilmer v. Railway Co., 30 Fed. Cas. 73; Schuehle v. Reiman, 86 N. Y. 271.

In Craig v. Hoge, supra, the court says:

"Jurisdiction is acquired by a court by the issue and service of process, and in a case of conflict of jurisdiction the priority of jurisdiction is determined by the date of the service of the process."

In Union Mut. Life Ins. Co. v. University of Chicago, supra, the rule was thus applied:

"As I have said, the bills were filed on the same day, the one in the circuit court of Cook county. and the other in this court. It seems that the bill in the state court was filed before the bill in this court, although on the same day. No process of either court was served on the day the bill was filed. On the 19th of February, the day following, the process of this court was served on all the defendants before 11 o'clock a. m. of that day. The process issuing from the state court was not served until after 2 o'clock p. m. of the same day. So that the process issuing from this court was first served, and the question is whether this court obtained jurisdiction of the case for the purposes contemplated by the bill, viz. for the foreclosure of the mortgage. Although the bill was filed in the state court first on the same day, the rule, I take it, is well settled that the right of a court to take jurisdiction of a party depends upon the service of process upon the party. If a party commences a suit, and process is not served, it does not take effect as against the party defendant. howsoever long process may remain in the hands of the officer. The process of this court being first served upon the defendants, the University of Chicago, and upon Boone. gave this court jurisdiction, and the right to go on and foreclose this mortgage."

In Owens v. Railroad Co., supra, the court says:

"But it is claimed that the filing of the bill first in the Sixth circuit, which in this proceeding is the commencement of the suit, confers jurisdiction. This, of necessity, cannot be so. Other necessary steps must be taken to bring the parties before the court, before a complete jurisdiction is acquired. Until that is done, the court could make no order that would affect the rights of a party. The usual mode is by service of process. It may be, and in some cases is, done by an order of the court, directing a seizure of the property, when some urgent necessity requires it, before service is had. In this case no such order was made, and we must therefore look to the service of process to ascertain which court first acquired jurisdiction. It is true that process was sued out first under the bill filed in the sixth circuit, but service of process was first had under the one filed in this circuit. We therefore conclude that, as between these proceedings. the process of this court being first served on the defendant company, it gave to this court full, complete, and prior jurisdiction over it, and the right to grant the relief prayed for in the bill."

In Wilmer v. Railway Co., supra, it is true that the court says:

"The commencement of the action and service of process, or, according to some cases, the simple commencement of the suit by filing of the bill, is sufficient to give the court jurisdiction, to the exclusion of all other courts."

I have not been able to find a case, however, in which it was directly held, upon the facts before the court, that jurisdiction was

acquired by the mere filing of a bill or complaint. There are two cases which, on cursory reading, seem to so hold, but careful examination of them shows otherwise. These cases are S'hoemaker v. French, 21 Fed. Cas. 1331, and Gamble v. City of San Diego, 79 Fed. 487. From the syllabus in the former case it appears that the order by which it was held the federal court had acquired jurisdiction was not only passed, but served, before any proceedings were commenced in the state court. In the latter case, that of Gamble v. City of San Diego, while the opinion of the court speaks of jurisdiction having been acquired by the institution of the suit, yet the facts were that in the state court, which it was held had first acquired jurisdiction, defendants entered their appearances before process was served in the federal court.

In Gaylord v. Railroad Co., supra, the court, in the earlier paragraphs of the opinion, seems to refer to the filing of the bill as the act which gives jurisdiction, but later on, to avoid misconstruction, says:

"Of course, in all that has been said it is assumed, what was the fact in this case, that the bill was not only filed first in this court, but that the process had been issued and duly served upon the parties, and that they were in court, subject to its jurisdiction, before any proceeding was instituted in the state court."

So that, it may, I think, be fairly stated that, in applying the rule that, where different courts have concurrent jurisdiction of the same controversy, that court which first takes cognizance will hold it until the litigation is finally disposed of, the authorities uniformly hold that jurisdiction is acquired, not by filing the bill or complaint, but by service of process. And the rule applies to both civil and criminal cases. Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 358, note 3, 76 Fed. 296; Taylor v. Taintor, 16 Wall. 366; In re James, 18 Fed. 853.

The phrase, "acquired jurisdiction," having been so often and unequivocably defined by the courts, I cannot do otherwise than assume that congress used it in the sense thus approved by authority and long usage. This assumption, together with the peculiar provisions of section 9 of said act, to which I have already adverted, forces me to the conclusion that, under said section, the courts "outside" of the Indian Territory were to retain jurisdiction, after September 1, 1896, only over those offenses committed in the territory for which the defendants were indicted and arrested on or prior to said date. This ruling makes it unnecessary for me to pass upon the objections which have been urged to the commitment.

On an application for a warrant of removal under section 1014, Revised Statutes of the United States, where the only ground for the warrant is an indictment pending in the district court of the district to which the removal is sought, and it appears from said indictment that said court has no jurisdiction of the alleged offense, the defendant should be discharged. The power of the district judge to so order, although not expressly declared in the section, is a necessary implication therefrom. U. S. v. Brawner, 7 Fed. 86; In re Wolf, 27 Fed. 607; In re Dana, 68 Fed. 886; In re James, 18 Fed. 853. The application for a warrant of removal is denied, and the defendant will be discharged.